J-S24019-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BRYAN RECKEWEG, | |
| Appellant | No. 2497 EDA 2014 |

Appeal from the Judgment of Sentence entered August 8, 2014,
in the Court of Common Pleas of Delaware County,
Criminal Division, at No(s): CP-23-CR-0001123-2014

BEFORE:  GANTMAN, P.J., ALLEN, and MUSMANNO, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED MAY 01, 2015**

Bryan Reckeweg ("Appellant") appeals from the judgment of sentence imposed after the trial court found him guilty of simple assault and harassment.[1]  We affirm.

The trial court summarized the facts of record as follows:

> On Thursday, December 26th 2013 at 00:01 hours, the Ridley Township Police were called to 112 Kedron Avenue for a report of a family domestic dispute.  On arrival, the police found a female whose nose was actively bleeding and had swollen injury areas on her face.  The investigating officer, Joseph Zielke, testified that the woman was visibly upset, crying, and excited.  The female victim, Teresa Craven, told the Investigating Officer that she has been involved in an argument with her boyfriend, [Appellant] Bryan Reckeweg.  She told the Officer that during this argument, [Appellant] held her down on

---

[1] 18 Pa.C.S.A §§ 2701(a)(1) and 2709(a)(1).

the floor and struck her several times with his closed fist, causing the above injuries. She stated that [Appellant] held his hand over her face and she bit his hand in an attempt to defend herself. She further stated that [Appellant] eventually let her up and she ran to telephone the police for assistance. Officer Zielke testified that he found [Appellant] calm and sitting in a seat in the living room area where he was cooperative. Officer Zielke stated that [Appellant] admitted to an altercation that Ms. Craven had initiated and that she had bit him causing the laceration on his left hand. Officer Zielke did not recall if there was an odor of alcohol on either the victim or the [Appellant] but noticed a beer can sitting in the vicinity of where [Appellant] was found seated. Officer Zielke testified that he noticed signs of a struggle in that furtniture had been misplaced and there was a broken lamp in the area where Ms. Craven had stated that the altercation took place. Officer Zielke stated that he asked Ms. Craven if she was willing to come back to the station to write a statement and she agreed. Officer Zielke testified that he observed Ms. Craven as she wrote her statement out and she seemed able to understand his questions and communicate and respond appropriately. He also stated that she was able to get into the police station and leave unassisted. Officer Zielke testified that neither he nor any of the other officers told Ms. Craven what to put in the statement and that they "…just told her to be as detailed as possible."

Teresa Craven testified at trial that she had been living with [Appellant] at the address where the incident occurred for approximately six months. Ms. Craven testified that she was "extremely intoxicated" the night of the incident[,] had consumed copious amounts of alcohol as well as Klonopin and was in a "blackout" state. She testified that she remembered being home, there being "some sort of chaos", and being in the police station at one point. When the Commonwealth showed her a written statement, Ms. Craven testified that it was her handwriting, and contained her signature, phone number, the date "12/26/13" and the time "12:38 am." She further testified that she wrote everything in that statement although she could not recall writing it when questioned at trial due to her being in a drunken state at the time she wrote it. When further questioned, Ms. Craven testified that she recalled making a statement but could not recall writing these particular words.

[Appellant] testified that he had been drinking the day of the incident as well but he did not consider himself drunk. He

claimed that around 11:15 p.m. he noticed that Ms. Craven had begun pouring bleach on his new clothing that was in the washing machine and he responded by grabbing the bleach bottle away from her. He stated that she then took a beer mug and smashed it against the laptop computer screen, breaking the mug but not the computer screen. [Appellant] claimed that this did not make him angry and that Ms. Craven has destroyed his property numerous times in the past while she was intoxicated. [Appellant] claimed that between 11:45 p.m. and 12:30 a.m. Ms. Craven began striking him and he responded by holding her and covering her mouth in order to not awake[n] the children sleeping downstairs. [Appellant] claimed that he never struck, hit, or punched Ms. Craven and that she received the bloody nose and the injury to the side of her face from struggling to get away from him and that he was "...simply protecting [his] belongings..." [Appellant] testified that [he] was unsure exactly how long Ms. Craven was struggling to get away but that he held her "...until she would get tired..." and that eventually she passed out in bed.

Trial Court Opinion, 12/15/14, at 1-4 (citations to notes of testimony omitted).

A non-jury trial commenced on June 12, 2014, at the conclusion of which the trial court found Appellant guilty of the aforementioned crimes. Following a hearing on August 8, 2014, the trial court sentenced Appellant to credit for time served for simple assault, and a consecutive ninety days of probation for harassment. No post-sentence motions were filed. Appellant filed a notice of appeal on August 29, 2014. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

1. Did the [trial] court err in denying [Appellant's] objection to the admission of witness Teresa Craven's pre-trial written statement after she denied that she remembered writing it?

- 3 -

2. Was the evidence insufficient to find [Appellant] guilty of the charges of simple assault and harassment since the Commonwealth failed to prove beyond a reasonable doubt that his actions satisfied the elements of these crimes?

3. Did the [trial] court err in imposing separate sentences for simple assault and harassment when the offenses properly should have merged?

Appellant's Brief at 5.

In his first issue, Appellant argues that the trial court erred in allowing the Commonwealth to introduce Teresa Craven's written statement into evidence, when Ms. Craven had no recollection of writing the statement. Appellant's Brief at 11-14. Specifically, Appellant argues that Ms. Craven's written statement constitutes inadmissible hearsay because Ms. Craven could not vouch for its accuracy, and that the trial court erred in admitting the written statement over Appellant's objection.[2] *Id*.

"A trial court has broad discretion to determine whether evidence is admissible and a trial court's ruling on an evidentiary issue will be reversed

---

[2] Ms. Craven's written statement to the police reads as follows:

> I, Teresa Craven, would like to say what occurred on 12/26/13. My boyfriend and I were having an argument and I was tackled and punched in the face numerous times, resulting in a bloody nose and minor facial injury. I was threatened and intimidated and had to hide upstairs to call 911. He told his "friends" to lie for him and say I was the aggressor.

Teresa Craven's Written Statement, 12/26/13.

only if the court abused its discretion. Accordingly, a ruling admitting evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous." ***Commonwealth v. Huggins***, 68 A.3d 962, 966 (Pa. Super. 2013) (citations and internal quotations omitted).

At trial, Appellant raised a timely objection to the introduction of the written statement on the basis that the statement constituted hearsay because Ms. Craven had no recollection of writing it. N.T., 6/12/14, at 13-16. The trial court, however, admitted the written statement under the "past recollection recorded" exception to the hearsay rule.

Our Supreme Court, addressing the "past recollection recorded" hearsay exception, has explained:

> Four elements are required for a hearsay statement to be admitted as a past recollection recorded: (1) the witness must have had firsthand knowledge of the event; (2) the written statement must be an original memorandum made at or near the time of the event and while the witness had a clear and accurate memory of it; (3) the witness must lack a present recollection of the event; and (4) the witness must vouch for the accuracy of the written memorandum.

***Commonwealth v. Young***, 748 A.2d 166, 177 (Pa. 1999).[3]

---

[3] ***See also Commonwealth v. Shaw***, 431 A.2d 897, 900 (Pa. 1981) ("[T]he fact that [the witnesses'] lack of recall may have been the product of a 'selective memory' a conscious desire to withhold certain information is not bar to the establishment of this requirement.").

Here, Appellant specifically disputes the fourth requirement of the exception, which requires the witness to "vouch for the accuracy of the written statement." *Id*. Appellant argues that although Ms. Craven acknowledged that the statement was in her handwriting, she stated that she had no recollection of writing it, and therefore, Appellant maintains that she was unable to vouch for its accuracy to permit its admission under the "past recollection recorded" exception. Appellant references the following testimony:

| Assistant District Attorney: | Do you recognize this document ... and that's your handwriting? |
|---|---|
| Ms. Craven: | That is my handwriting, correct. |
| Assistant District Attorney: | Okay. Is that your signature right there at the bottom? |
| Ms. Craven: | That is my signature, correct. |
| | *** |
| Assistant District Attorney: | Okay. So you wrote everything in that statement, correct? |
| Ms. Craven: | Apparently, yes. |
| | *** |
| | I recall writing -- I don't know – I don't remember writing that particular statement, no. But I – I'm saying that is my handwriting, but I don't recall writing it. I was in a drunken state. |
| Assistant District Attorney: | Okay. But you recall the statement ... |
| Ms. Craven: | I'm saying... |
| Assistant District Attorney: | You just don't recall writing these words? |

| Ms. Craven: | ... I believe I did, yes. ... I mean – but I don't recall writing it. ... I was in a state of mind where I don't recall it. |

N.T., 6/12/14, at 13-16.

Based on the foregoing testimony, Appellant argues that Ms. Craven's written statement was inadmissible under the past recollection recorded exception because Ms. Craven could not vouch for the accuracy or truth of the statement. In ***Commonwealth v. Floyd***, 476 A.2d 414 (Pa. Super. 1984), we explained:

> The reason for excepting any particular category of out-of-court statement to the hearsay rule is because experience shows that it is substantially more trustworthy than hearsay in general. We think that a fresh statement of identification made soon after a crime or other occurrence by a witness thereto is substantially more trustworthy than hearsay in general ***only if the witness vouches for the identification under oath at trial. Absent this important indicium of trustworthiness, we do not think that it merits exception to the hearsay rule***.

***Floyd***, 476 A.2d at 418 (emphasis added).

Our review of the limited case law of this Commonwealth addressing the "past recollection recorded" exception reveals that our courts have upheld the admissibility of the written statement as having been properly "vouched for" only where the witness has been able to recall making the statement and has avowed that the statement was true. ***See e.g***. ***Young***, 748 A.2d at 176 (although witness had no present recollection of the events, the witness identified his signature on the statement, recalled making and signing it, and testified that he told the police the truth when he made it);

- 7 -

*Commonwealth v. Shaw*, 431 A.2d 897 (Pa. 1981) (witness twice admitted on direct examination that he had told the truth when he made his written statement).

However, where the witness has been unable to affirm that the written statement was true, thereby failing to vouch for its accuracy, we have found the written statement inadmissible. For example, in *Floyd, supra*, the witness, on the day after a murder, made a statement identifying the perpetrator as a man who resembled the defendant. On the date of trial, however, the witness did not testify that his prior statement of identification was a truthful one. We concluded that because the "past recollection recorded" exception required the witness to vouch for the truth and accuracy of the statement and this requirement had not been met, the evidence was inadmissible.

Similarly, in *Hammel v. Christian*, 610 A.2d 979 (Pa. Super. 1992), this Court addressed a scenario where the witness professed to lack any recollection of the incident at issue, and either could not or would not vouch for the accuracy of the statement, stating instead that she did not remember giving the statement. Under these circumstances, we concluded that the trial court did not err when it held that the written statement was hearsay and inadmissible under the "past recollection recorded" exception.

In the present case, Ms. Craven, as in *Floyd* and *Hammel*, did not vouch for the accuracy of the statement, testifying instead that she did not

recall writing it. Under these circumstances, the record reflects that Mrs. Craven did not vouch for the accuracy of the written statement to satisfy the fourth prong of the "past recollection recorded" exception. Although, as the trial court noted, Ms. Craven acknowledged that the handwriting was hers, she could not say that the statement itself was accurate. Given that Ms. Craven could not vouch for the statement's accuracy, we conclude that the trial court erred in admitting it under the past-recollection recorded exception to the hearsay rule. *See also Commonwealth v. Cooley*, 398 A.2d 637 (Pa. 1979) (holding that the Commonwealth did not lay a proper foundation for admissibility of a writing as a past recollection recorded where it was not established that witness had determined that the writing was accurate).

Nonetheless, we must determine whether the trial court's admission of Ms. Craven's written statement constituted harmless error. "The harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, not a perfect trial." *Commonwealth v. Rasheed*, 640 A.2d 896, 898 (Pa. 1994).

> Harmless error exists if the record demonstrates either: (1) the error did not prejudice the defendant or the prejudice was de minimis; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Hawkins***, 701 A.2d 492, 507 (1997).

Here, only three witnesses testified at trial:  Ms. Craven, who testified that she could not recollect any of the events in question; Officer Zielke, who responded to the report of a domestic disturbance at Appellant's residence; and Appellant, who testified on his own behalf.  Ms. Craven testified that on the date of the incident, she was intoxicated from alcohol and prescription pill consumption, and that she had in the past similarly "blacked out [yet] functioned" without subsequently being able to remember what she said or did.  N.T., 6/12/14, at 12-13.  Officer Zielke testified that on his arrival at Appellant's residence, he was met at the door by Ms. Craven, who was "visibly upset" and "crying" and bleeding from her nose.  ***Id***. at 21.  The officer testified that Ms. Craven stated that Appellant had hit her.  ***Id***. at 22.  The officer additionally observed that the furniture in the apartment was misplaced, that there were signs of a struggle, and that Appellant had an injury to his left hand.  ***Id***. at 22-23.  Finally, Appellant testified that he did not strike Ms. Craven, that she was intoxicated, and that she attempted to destroy his personal property.  ***Id***. at 32-38.  Appellant admitted to a struggle with Ms. Craven, testifying that because Ms. Craven was destroying his property, he "held her" and "covered her mouth, because it was 12:30 – there were kids sleeping ... That's where she got the brush on her face, and that's where she got the bloody nose from struggling to get away from me." ***Id***. at 37.

We conclude that based on the foregoing, although the trial court erred in admitting Ms. Craven's written statement, the error was harmless. Ms. Craven's written statement was merely cumulative of the substantially similar and untainted testimony of Officer Zielke, who related that Ms. Craven told him Appellant had hit her, and testified to his observations of Ms. Craven's and Appellant's injuries and the disarray in the residence that evidenced a struggle. Moreover, Appellant admitted to a struggle with Ms. Craven that resulted in her injuries. In light of the foregoing, we conclude that the trial court's error in admitting Ms. Craven's written statement was harmless, and that Appellant is not entitled to relief on this claim.

Appellant next argues that the evidence was insufficient to support his convictions of simple assault and harassment because the Commonwealth failed to prove beyond a reasonable doubt that his actions satisfied the elements of these crimes. Appellant's Brief at 15-17. When reviewing a challenge to the sufficiency of the evidence, we are bound by the following:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.
>
> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any

doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

***Commonwealth v. Tarrach***, 42 A.3d 342, 345 (Pa. Super. 2012).

To support a conviction for simple assault pursuant to 18 Pa.C.S.A § 2701(a)(1), the Commonwealth was required to prove that Appellant attempted to cause or intentionally, knowingly or recklessly caused bodily injury to Ms. Craven.

To support a conviction for harassment pursuant to 18 Pa.C.S.A § 2709(a)(1), the Commonwealth was required to prove that Appellant, with the intent to harass, annoy or alarm another, struck, shoved, kicked or otherwise subjected Ms. Craven to physical contact, or attempted or threatened to do the same.

Here, Officer Zielke's testimony that Ms. Craven reported to him that "her boyfriend had beat her and hit her," together with his observation of evidence of a struggle in the apartment and injuries to Appellant, was sufficient to support the trial court's determination that Appellant was guilty of simple assault and harassment. N.T., 6/12/14, at 22. In addition, as the trial court observed, Appellant admitted that he struggled with Ms. Craven, and in the process she received a bloody nose. ***See*** Trial Court Opinion, 12/15/14, at 5-6. Viewing this evidence and all reasonable inferences drawn therefrom in a light most favorable to the Commonwealth as verdict winner, we conclude that the evidence was sufficient for the trial court to conclude

that Appellant intentionally, knowingly or recklessly caused bodily injury Ms. Craven to support his simple assault conviction, and that Appellant, with intent to harass, annoy or alarm, struck, shoved, kicked or otherwise subjected Ms. Craven to physical contact, to support the conviction for harassment.

In his third and final issue, Appellant asserts that his sentences for simple assault and harassment should have merged because they arose from the same event. Appellant's Brief at 18.

42 Pa.C.S.A. § 9765, pertaining to the merger of sentences, provides:

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

We have explained that "the legislature has provided us with clear direction by its enactment of [s]ection 9765 [which] makes the legislature's intent with respect to merger manifest. That intent focuses solely on the elements of the offenses for which a criminal defendant has been convicted." **Commonwealth v. Jenkins**, 96 A.3d 1055, 1058 (Pa. Super. 2014). As discussed above, simple assault requires proof that the defendant attempted to cause or intentionally, knowingly or recklessly caused bodily injury to another. 18 Pa.C.S.A. § 2701. Harassment is proven if the defendant, with the intent to harass, annoy or alarm another person, strikes, shoves, kicks

- 13 -

or otherwise subjects the other person to physical contact, or attempts or threatens to do the same. 18 Pa.C.S.A. § 2709. As the trial court properly concluded, and is evident from the express statutory language, the crime of harassment requires an element (intent to harass, annoy or alarm) that is distinct and separate from the crime of simple assault (intentionally, knowingly or recklessly intending to cause bodily injury). Therefore, the crimes do not merge for sentencing purpose.

Based on the foregoing, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/1/2015

- 14 -